**UNITED STATES of America**

v.

**Matthew HOMAN, Defendant**

**No. CR. 02–123–PC.**

United States District Court, D. Maine.

Feb. 27, 2003.

---

**4.** I am disappointed that neither party cited the First Circuit authority of *Roche, Lafayette* and *Upham.*

Darcie N. McElwee, U.S. Attorneys Office, Portland, ME, for USA, Plaintiff.

Clifford Strike, Strike, Goodwin & O'Brien, Portland, ME, for Matthew Homan (1), Defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

GENE CARTER, Senior District Judge.

Matthew Homan, charged with robbery in violation of 18 U.S.C. § 1951(a), seeks to suppress all evidence seized as the result of an alleged illegal stop by law enforcement officials on the night of November 12, 2002. Motion to Suppress (Docket Item No. 5) at 1. Defendant argues that the stop, detention, and subsequent seizure of property were in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* An evidentiary hearing was held before the Court on January 23, 2003, after which counsel filed post-hearing memoranda. After careful consideration of the record before it, the Court finds that both the stop and the seizure of evidence was legal and will deny Defendant's Motion to Suppress.

### I. Facts

On November 12, 2002, at approximately 2:52 a.m., the Saco Police Department received a report that an armed robbery had just occurred at the Hampton Inn on Industrial Park Road in Saco, Maine. Specifically, the caller reported that the robber was a lone male wearing a black jacket and an orange ski mask and that he had left the Hampton Inn on foot. Within thirty seconds of receiving the call, Officer Scott Rochefort of the Saco Police Department reached Industrial Park Road in his marked police cruiser. Turning onto Industrial Park Road, Officer Rochefort turned off his headlights. Illuminated by the streetlights on the road, Officer Rochefort saw a lone individual riding a bicycle

towards him and away from the Hampton Inn at a distance of approximately 200 yards down the road. The individual turned across the roadway in front of the police cruiser as the officer approached. At this point, with the bicyclist approximately 100 yards away, Officer Rochefort turned on his headlights, and the individual, whom the officer noticed was wearing a dark jacket, turned into the empty parking lot of a closed business and pedaled away from the officer. As Officer Rochefort followed the individual into the parking lot, the subject pedaled away faster, glancing backwards at the police car. At this time, less than a quarter of a mile away from the Hampton Inn, Officer Rochefort ordered the bicyclist to stop, and he complied.

Upon approaching the subject, Officer Rochefort noticed a plastic bag hanging on the handlebars of the bicycle. The officer drew his firearm and told the individual to raise his hands. Upon taking this action, the bicycle and plastic bag fell, and Officer Rochefort ordered the subject to fall to the ground and to spread his arms and legs. At that point, another Saco Police Department officer arrived, and Officer Rochefort handcuffed the subject and stood him up, asking for identification. The suspect claimed to have no identification, and he verbally identified himself as Matthew Homan, the Defendant in this case. Officer Rochefort then performed a pat-down of Defendant and felt what he thought was a weapon in his coat pocket. Instead of a weapon, however, Officer Rochefort found bolt cutters. When he asked Defendant what was in the bag, Defendant answered that he had a gun, but that it was not loaded, and that he had taken the bullets out "before." The two officers then looked inside the plastic bag and found a pair of khaki pants, a shirt, socks, a revolver, bullets, a speed loader, money, handwritten notes, and an orange ski mask.

## II. Discussion

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and requires that any search or seizure be supported by probable cause that a crime was committed. U.S. CONST. amend. IV. Since the Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a brief investigatory stop may be undertaken by a law enforcement officer if based on a reasonable and articulable suspicion, even if the officer lacks probable cause. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). It is not possible to precisely define what constitutes reasonable suspicion and, therefore, courts must determine on a case-by-case basis whether or not it exists. *See United States v. Chhien*, 266 F.3d 1, 6 (1st Cir.2001). In making this case-by-case determination, courts "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). Although an officer may not rely on a mere "hunch" to justify a stop, reasonable suspicion requires less than that required to find probable cause, and it does not require evidence of a direct connection linking the suspect to the suspected crime. *See Chhien*, 266 F.3d at 6. What is required is " 'a practical, commonsense judgment based on the idiosyncrasies of the case at hand' and an assessment whether the officer's actions 'were fairly responsive to the emerging tableau.' " *United States v. Hornbecker*, 316 F.3d 40, 47 (1st Cir. 2003) (*quoting Chhien*, 266 F.3d at 6).

The idiosyncrasies of the instant case all point to the existence of reasonable suspicion. Officer Rochefort was in

the immediate vicinity of the place where the alleged robbery took place, and within thirty seconds of receiving the information that a lone male had perpetrated a robbery, he reached the street where the robbery had taken place, and was within 200 yards of a single individual riding away from the alleged crime scene. At the time these events occurred, it was nearly 3:00 a.m. on a commercial street where the only establishment open was the Hampton Inn. Upon seeing Officer Rochefort, Defendant cut across the road in front of him and entered the abandoned parking lot of a closed business, pedaling in the opposite direction of what he had been when the officer first saw him and glancing backwards as if fleeing from the police cruiser. Officer Rochefort testified at the suppression hearing that Defendant was the only person he ever saw after receiving the call and that he saw him within one-quarter of a mile from the crime scene. He saw Defendant within minutes of being notified that a crime had taken place, and Defendant generally fit the description provided of the perpetrator. Moreover, Defendant was observed attempting to avoid contact with the officer. All of this provided Officer Rochefort with a reasonable and articulable suspicion that this individual might have been involved in the robbery at the Hampton Inn. Officer Rochefort's practical and commonsense judgment to stop this individual does not violate the Fourth or Fourteenth Amendments.[1]

Nor do the officer's subsequent pat-down and perusal of the contents of the plastic bag held by the Defendant violate any constitutional mandates. If an officer has a reasonable basis to suspect that the subject of his inquiry may be armed, he may frisk the suspect. *United States v. Cook*, 277 F.3d 82, 85 (1st Cir. 2002). Officer Rochefort encountered the Defendant at 3:00 a.m. in an abandoned parking lot and suspected that he may have just perpetrated an armed robbery; he was, therefore, justified in conducting a pat-down of the Defendant to ensure that he had no weapons. Next, Officer Rochefort's actions were "fairly responsive to the emerging tableau," *Chhien*, 266 F.3d at 6, and "reasonably related in scope to the circumstances which justified the interference in the first place." *Cook*, 277 F.3d at 85 (*quoting Terry*, 392 U.S. at 20, 88 S.Ct. 1868.) When asked what was in the plastic bag, Defendant admitted that there was a gun. Such an admission provides all the justification Officer Rochefort needed to then open the bag and survey its contents.

### III. Conclusion

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Suppress be, and it is hereby, **DENIED**.

---

1. The fact that Officer Rochefort did not have any information that he was looking for someone on a bicycle does not undermine the Court's conclusion regarding the legality of the stop. It is quite possible that an individual intending to rob a certain establishment will enter the place of business on foot, and that he will likewise exit on foot. The only witnesses to a robbery taking place at nearly 3:00 a.m. will likely be those who are working inside the establishment, and it is not improbable that they will only see the perpetrator walk out of the building and will not witness his subsequent means of getaway. It is just as possible that such an individual will have waiting outside some form of transportation that will make his getaway faster, such as a bicycle. That the officer encountered Defendant alone on a dark and deserted road at 3:00 in the morning, less than one-quarter of a mile from where the robbery had taken place and within minutes of the alleged crime is more than enough to give him reasonable suspicion to stop the suspect, whether he was on a bicycle or on foot at that time.